Good morning, Your Honours. May it please the Court, my name is Avisaga Yala. Could you speak up a little bit, please? Yes. My name is Avisaga Yala, attorney for Petitioner. With the Court's leave, I'd like to reserve five minutes for rebuttal. The questions for the Court today is whether the BIA erred in holding that Mr. Luviano did not commit or did not establish statutory eligibility for cancellation of removal. Specifically, the Court's affirming the immigration judge's finding that he was convicted for two crimes of moral turpitude. Initially, Your Honour, on our brief, we argued that 470B California Penal Code was not a crime of moral turpitude. And his subsequent offense of 484, theft California Penal Code, at that time, under the current case law, was a crime of moral turpitude, but would fall under the petty offense exception. But that's not properly before us, is it? Because that was not raised to the agency and it was not in your opening brief to us, the 484 question. No, Your Honour. However, it was previous to de compte and... Except that we lacked jurisdiction if it wasn't presented to the agency. That is correct, Your Honour. However, we addressed the 484 under the petty offense exception. We submitted... That's a different argument. Yes, Your Honour, that is. Okay, so if you would, unless my colleagues have different questions, I'd appreciate your addressing the issue that you did brief, and that is about the 470 crime. Yes, Your Honour. So, 470, Petitioner is arguing that even though he was convicted for a fraud offense, because he was just in possession of the California's driver's license, he was not convicted of a crime of moral turpitude. In following the same line of analysis, that because the statute can cover more conduct than the generic federal definition. Except that the text of the statute requires that the possession be with the intent to have the license or card used to facilitate the commission of a forgery, not just that you happen to have it in your wallet. So why doesn't that answer your argument? Your Honour, like I said, I'm very sorry. I just, at this point, in preparation for this, I believed I could argue that the court has since found that 484 was not a crime of moral turpitude, categorically overbroad and indivisible. So I would focus on fitting the 470B conviction under the petty offense exception because of the clear finding in Lopez Valencia regarding the 484 theft. So I didn't go further into the argument but what has been on the brief, Your Honour. Do you agree that generic forgery is a crime of moral turpitude? Yes. And your only argument is that the California statute doesn't have the same elements that would make it a crime of moral, necessarily make it a crime, the forgery moral turpitude crime that's been interpreted under the federal law. That is correct. And I would submit on the brief on that issue, Your Honour. I wanted to bring up the fact that this court had clearly found the 484 wasn't categorically a crime of moral turpitude or categorically, was categorically overbroad and indivisible. And therefore, didn't meet the categorical definition and we couldn't go into the modified categorical approach in Lopez Valencia v. Lynch. So if that specific crime was found not to be a crime of moral turpitude, then he would just be left with the 470B. That would become a non-issue under the petty offense exception. But I understand the court's position that I hadn't brought that up. It was post to my submitting of the brief and I understand, Your Honour, I've submitted a late 28-J letter. So I will submit on that issue, Your Honour. I did have one question because I think one of the basis for your appeals is that the IJ didn't grant a continuance to see if whether or not there would be a visa petition. But it seems like, and I wanted you to clarify for me if you could, that there had not been a petition filed when the IJ made that decision or even a year later. So I was just trying to figure out why you thought the IJ abused its discretion in denying your continuance. At the time, because we demonstrated the hardship the family was going through, and there is clear relief for this family. Unfortunately, because of the hardship that the children and the spouse are going through, it's difficult for them, one, monetarily, and two, even to leave the country for a couple months to a year for waivers to get approved. The law has changed at this point where we can do the I-601A provisional waiver within the country. So a petitioner's departure would be just a couple of weeks. But at this point, because of the hardship the family is going through, even that would cause extreme hardship. We demonstrated... Well, has a visa petition been filed then? Yes, and it's been approved. On our brief, we stated that at that time it had been approved. By this time, we could have gotten certain waivers approved for the family to proceed with their case and avoid the I-212 removal waiver. I'm sorry, but at which time was the petition filed? It was filed after the judge's order. That is correct. After the BIA's order? It was pending during the BIA's order, so we didn't have an approval. We submitted just the fact that it was pending, and it was approved post the BIA's order. Okay, I thought the BIA had mentioned that as of the time they issued their decision, it had still not been filed. Am I wrong about that? That was over a year later. That's my understanding, too. Are you saying that the petition had been filed prior to the BIA's decision? Could you allow me just a minute, Your Honor? I don't have the actual receipt, Your Honor, but I believe it was already filed but pending. After we submitted the brief with the BIA, we hadn't had a receipt or an approval notice when the BIA issued their order. But by the time we appealed to this court, there was an approval notice, and we presented to the court the fact that the case had been approved at that point. But in terms of addressing Your Honor's question in regards to the continuance, the abuse of discretion argument was based on the fact that we presented arguments that they were trying to get the funds to file this petition. And we asked for one short continuance to do so. Unfortunately, I understand how it may seem that even if she had granted the continuance, it hadn't been filed until a year later. But that comes with a lot of other expenses in addition to attorney fees and appeal costs that they had now to incur instead of right away filing the I-130 petition. And so again, Your Honor, my main argument today was to base the 484 theft is no longer a CIMT by the rulings of this court and submit that the 470B falls under the petty offense exception. Thank you. You can save the rest of your time for rebuttal if you'd like.  Thank you, Your Honor. Good morning. May it please the court, my name is Lindsay Glarner and I represent the government. This petition for review should be denied in part and dismissed in part for two primary reasons. First, the agency properly concluded that Mr. Loviano is ineligible for cancellation of removal and voluntary departure because his conviction for forgery, I'm sorry, for possession of a forged document with intent to commit forgery is a crime involving moral turpitude and his petty, his theft conviction does not qualify for the petty offense exception. Counsel, is this a case that would benefit from mediation efforts in view of the citizenship, new citizenship of the petitioner's wife? Yes, Your Honor. Unfortunately, Mr. Loviano is not eligible for adjustment of status in the United States. He entered the country without inspection and so one of the basic requirements for adjustment of status under 1255A is that you were admitted or paroled into the country and he was not. And there isn't a waiver within the United States to waive that requirement. So we considered the possibility of prosecutorial discretion in this case and or a remand or a joint motion to reopen for adjustment of status and it's just, it would be pointless, unfortunately, because he does not meet the basic requirement for adjustment of status. So if he were to be granted voluntary departure, what would happen then with respect to potential adjustment of status later? If he were to be granted voluntary departure and he voluntarily departed as ordered. Yes. Then he could consular process outside, then he would return to Mexico and then he could apply to consular process there, which he could also do even with an order of removability. He would just have to seek certain waivers before leaving the country. Right. So I guess I'm wondering why that couldn't be part of a discussion. If the government doesn't want to do it, that's fine, but just saying that he can't do it in the United States doesn't seem like a complete answer to the possibility of a negotiated resolution. So what do you have in mind, Your Honor? I don't have anything particular in mind. I just was questioning your flat statement that because no waivers could be granted while he's in the country, there was no possibility of finding any way out of his predicament and later adjustment. And I didn't mean to state that there's no waivers that he can obtain in the country. Adjustment of status and consular processing are two very different forms of relief. And so for purposes of adjusting status within the country, he can't waive, if you will, the fact that he illegally entered the country. And in order to apply for adjustment of status by sitting in the country, he had to have been admitted or paroled. Because what you're – I'm sorry. And so for consular processing, he can apply for waivers. As Petitioner's Counsel mentioned, he could apply for an unlawful presence waiver in the country. But I see that he also has different hurdles for an unlawful presence waiver, which is used for consular processing, because for that waiver, he has to be otherwise admissible. And he has two CIMT convictions. But what year was the conviction for the forgery? The forgery was 2007, Your Honor, and the theft conviction was 2009. So are you saying that he has to leave the United States in order to seek any legal permission to come back? Right. So what he would do is he'd apply for an immigrant visa outside of the country. Based on his citizen wife. Correct. And just to go back to a point that Petitioner's Counsel raised in terms of when the I-130 was filed, in preparation for argument, I contacted SIS. And the I-130 was not filed until 2014. So that was years after the board decision in this case and years after the immigration judge's decision. It was granted fairly quickly because she was a United States citizen and they did find him prima facie eligible for the I-130. But unfortunately, an I-130 doesn't give him any sort of relief to remain in the country. He has to qualify either for adjustment of status by remaining in the country or he has to consular process. So you say he's not eligible for voluntary departure. But if this case were mediated, is that something that the government could nevertheless agree to, even if they can't agree to any type of adjustment while he remains in the United States? Unfortunately, the Department of Justice, we cannot grant him voluntary departure. The case would have to be remanded to the immigration judge for consideration of his eligibility for voluntary departure. I've remanded several cases in the past and I've never remanded a case for just for the judge to reassess eligibility for voluntary departure. When at the time the immigration judge decided the issue, he was not eligible for that relief. So we'd be remanding it to give him something that he wasn't at the time of the immigration judge's decision eligible for. I can definitely take this issue back and we can discuss it with my supervisors and see if that's a possibility. It's just not something that I've personally done in the past. How do you distinguish them? Because it looks like Petitioner relies somewhat heavily on matter of CERNA. How do you distinguish that from here? Yes, Your Honor. Matter of CERNA was a case in which, in order to be convicted of that federal statute, all the government had to show was that the alien possessed an altered immigration document and knew that the immigration document had been altered. In this case, we have much more than that. We have not only did Mr. Lubiano have to know that he possessed a forged driver's license and that the driver's license was forged, but he also had to possess it with the intent to commit forgery. And that intent requirement is what was missing in the statute in CERNA. They're just two very different statutes and CERNA lacked the specific intent required in 470B that we have here. And that intent is really what makes this offense a CIMT. As the Board explained, in matter of Jimenez, in criminal possession of forged documents, the mental state component in those cases, intending to commit a CIMT, intending to commit forgery, is what makes the offense a CIMT. It's very similar to how this Court views burglar offenses. You know, breaking and entering in and of itself is not a CIMT, but when coupled with the intent to commit larceny, that is what makes that conduct morally turpentinous. Yes, Your Honor. My question is, assuming that we had jurisdiction to consider it, what is your response on the merits to the argument about Section 484A? And, you know, I was surprised to get Counsel's 28-J letter actually this morning, raising this issue for the first time, because as you identified, they've always conceded that 44 is a CIMT. This Court has at least three published cases holding that 44A is a CIMT. That's Flores-Lunas v. Mukasey, Castillo-Cruz v. Holder. In all those cases, they've held that 44 is a CIMT. Lopez-Valencia does not change that fact. Lopez-Valencia is an aggravated felony case, and the generic definitions for aggravated felony forgery, I was going to say theft, forgery, and the CIMT, the generic definition for CIMT forgery, are very different. So the fact that this Court, and I would point out, this Court has long held that California theft is not an aggravated felony, and California theft is a CIMT. So Lopez-Valencia doesn't at all impact this Court's case law finding California petty theft to be a CIMT. The generic definitions are just different, Your Honor. With respect to the denial of the motion to continue, the government's position is that the Court just lacks jurisdiction to consider his new argument that his wife is now a United States citizen. That was something that was never presented before the Board, and thus the Board didn't have the opportunity to take that factor into consideration in assessing whether a continuance was warranted. And the government believes that the agency did act within their discretion in denying the continuance because of the fact that at the time the continuance was requested, the I-130 had not been filed. And as we now know, it wasn't filed until many years after the immigration judge's decision. And at the time of the request for the continuance, he wasn't pre-manifatia eligible for adjustment. And that fact, unfortunately, hasn't changed. His wife's United States citizen status does not at all change his eligibility for adjustment within the country. And unless you have any other questions, I'll just sum up. Because Mr. Lubiano has two convictions involving moral turpitude, he's ineligible for cancellation of removal and voluntary departure. And this Court lacks jurisdiction to consider his new argument that his wife is a United States citizen. And for those reasons, this Court should dismiss the petition for review in part and deny it in part. Thank you, Counsel. Thank you. Ms. Ayala, you have some time for rebuttal. Yes, Your Honor. I would just like to address the question of if this case is remanded or if there is a conciliation that we can come to, the petitioner would still have to leave the country after applying for an unlawful presence waiver. If that was approved, he'd still have to leave for some time for his case to be adjudicated. However, he wouldn't have to apply for the more stricter I-212, which is the waiver for removability. At the same time, we'd make the argument that we're making now that he is admissible because he doesn't have two crimes of moral turpitude, so he would be eligible to consider a process. Under the argument that Lopez Valencia does apply to his case regardless if it was an aggravated felony case that the Court was analyzing at that point, what they instituted was in analyzing a death crime, the Court established that by Decombs and Rendon that this particular California state theft statute is both overbroad and indivisible. And in finding that, even if you're doing the crime of moral turpitude analysis, if it's not categorical, it's overbroad and indivisible, then you won't be able to go into a modified categorical analysis. A judge wouldn't be able to go into a modified categorical analysis to find that it's a crime of moral turpitude. So the same analysis applies, although they were addressing the aggravated felony. Could I get back to the potential of mediation for a moment? Yes. Because you mentioned when you first began arguing the hardship of your client having to leave the United States for any period of time and what the government was suggesting was that under the circumstances, your client would have to leave the United States and apply through the consular process in Mexico. Would your client be willing to leave the United States for that period of time? I heard that there was a possibility that that was not something that he could do. Yes, Your Honor. At the time, the law at the time that we submitted our briefs was very different. We didn't have the ability to submit I-212 waivers under the new regulations, which would address his removability inside the United States before leaving, which would put him at a weight of at least, even if his I-601 unlawful presence waiver were granted here, it would leave him in a position where he'd still have to remain outside the United States eight months to a year or possibly more while his I-212 waiver was being adjudicated. We now have the ability to file under the new regulations removability waivers here and then file the unlawful presence based on whether those are granted or not. And at this point, conciliation or mediation would just help in the sense that he wouldn't have to, we'd argue he is admissible, otherwise admissible, so he wouldn't have to file for the I-212, but his time outside of the United States would be shortened to just a couple of days or weeks while he gets his medical exams and his biometrics. Thank you. And I'll submit on that, Your Honor. Thank you, counsel. We appreciate the arguments of both of you, and the case just argued is submitted.
judges: Graber, Murguia, Bolton